UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

DASHI HURSEY,

        Plaintiff,        Case No. 2:15-cv-145

v.        HON. GORDON J. QUIST

DIANE ANDERSON, et al.,

        Defendants.
_____/

# REPORT AND RECOMMENDATION

This is a civil rights action brought by state prisoner Dashi Hursey pursuant to 42 U.S.C. § 1983. Plaintiff's remaining claims are for retaliation against Defendants Inspector Jeff Contreas, Nurse Gabe Gluesing, Dr. Wijayagunaratine, Physician's Assistant Jason Vayre, and Nurse Steve Meleko.[1] The Sixth Circuit concluded that:

> [S]everal of Hursey's other retaliation claims, when accepted as true, could pose "a sufficient deterrent threat to be actionable." *Id*. He asserted that Contreas kept him in segregation for thirteen extra days as a personal favor to Anderson and that "Meleko has continued to try to get [him] to . . . provide him sexual favors." And he accused Gluesing, Agunaratine, and Vayier of withholding medical treatment. These are not inconsequential acts.

(ECF No. 19, PageID.118). Defendants Wijayagunaratine, Contreas, Gluesing, and Meleko filed a motion for summary judgment (ECF No. 65) on the ground that Plaintiff failed to exhaust his available administrative remedies on each of his claims. Plaintiff filed a response (ECF No. 79).[2]

---

[1] Plaintiff refers to D. Wijayagunaratine as Dr. Wijay or Dr. Agunaratine and Plaintiff refers to P.A. Vayre as P.A. Vayier.

[2] Defendant Vayre has filed a motion for summary judgment (ECF No. 84). A separate recommendation will issue on that summary judgment motion.

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005); *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)); *see also Tucker v. Union of Needletrades Indus. & Textile Employees*, 407 F.3d 784, 787 (6th Cir. 2005). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Twin City Fire Ins. Co. v. Adkins*, 400 F.3d 293, 296 (6th Cir. 2005).

A prisoner's failure to exhaust his administrative remedies is an affirmative defense, which Defendants have the burden to plead and prove. *Jones v. Bock*, 549 U.S. 199, 212-216 (2007). A moving party without the burden of proof need show only that the opponent cannot sustain his burden at trial. *See Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *see also Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). A moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). "Where the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir.

1986) (quoting W. SCHWARZER, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)). The United States Court of Appeals for the Sixth Circuit repeatedly has emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561 (quoting 11 JAMES WILLIAM MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 56.13[1], at 56-138 (3d ed. 2000); *Cockrel*, 270 F.2d at 1056 (same). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

Pursuant to the applicable portion of the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001). A prisoner must first exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones v. Bock*, 549 U.S. 199, 218-19 (2007); *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218-19. In rare circumstances, the grievance process will be considered unavailable where officers are unable or consistently unwilling to provide relief, where the exhaustion procedures may provide relief, but no ordinary prisoner can navigate it, or

"where prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross v. Blake*, 136 S.Ct. 1850, 1859-1860 (2016).

MDOC Policy Directive 03.02.130 (effective July 9, 2007), sets forth the applicable grievance procedures for prisoners in MDOC custody at the time relevant to this complaint. Inmates must first attempt to resolve a problem orally within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ P. If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted oral resolution. *Id.* at ¶¶ P, V. The inmate submits the grievance to a designated grievance coordinator, who assigns it to a respondent. *Id.* at ¶ V. The Policy Directive also provides the following directions for completing grievance forms: "The issues should be stated briefly but concisely. Information provided is to be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ R (emphasis in original). "But when prison officials decline to enforce their own procedural rules and instead consider a non-exhausted claim on its merits, a prisoner's failure to comply with those rules does not create a procedural bar to that prisoner's subsequent federal lawsuit." *Hardy v. Agee*, No. 16-2005, at 3 (6th Cir. Mar. 5, 2018) (unpublished) citing *Reed-Bey v. Pramstaller*, 603 F.3d 322, 325 (6th Cir. 2010). The Sixth Circuit has explained:

> [A] prisoner ordinarily does not comply with MDOCPD 130—and therefore does not exhaust his administrative remedies under the PLRA—when he does not specify the names of each person from whom he seeks relief. *See Reed-Bey v. Pramstaller*, 603 F.3d 322, 324-25 (6th Cir. 2010) ("Requiring inmates to exhaust prison remedies in the manner the State provides—by, say, identifying *all* relevant defendants—not only furthers [the PLRA's] objectives, but it also prevents inmates from undermining these goals by

4

>  intentionally defaulting their claims at each step of the grievance process, prompting unnecessary and wasteful federal litigation process."). An exception to this rule is that prison officials waive any procedural irregularities in a grievance when they nonetheless address the grievance on the merits. *See id*. at 325.   We have also explained that the purpose of the PLRA's exhaustion requirement "is to allow prison officials 'a fair opportunity' to address grievances on the merits to correct prison errors that can and should be corrected to create an administrative record for those disputes that eventually end up in court." *Id*. at 324.

*Mattox v. Edelman*, 2017 WL 992510, slip op. at 8-9 (6th Cir. 2017).[3]

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten days after the response was due. *Id.* at ¶¶ T, BB.  The respondent at Step II is designated by the policy, *e.g.,* the regional health administrator for medical care grievances. *Id.* at ¶ DD.  If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form.  *Id.* at ¶¶ T, FF.  The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due.  *Id.* at ¶¶ T, FF.  The Grievance and Appeals Section is the respondent for Step III grievances on behalf of the MDOC director.  *Id.* at ¶ GG.  "The total grievance process from the point of filing a Step I grievance to providing a Step III response shall generally be completed within 120 calendar days unless an extension has been approved . . . ."  *Id.* at ¶ S.

---

[3] In *Holloway v. Mclaren*, No. 15-2184 (6th Cir., April 7, 2016) (unpublished), the Sixth Circuit concluded that where a plaintiff fails to name each defendant in his grievance, the un-named defendants may not be dismissed for failure to exhaust grievance remedies if the MDOC did not reject the grievance under the policy requiring a grievant to name each individual involved.  The Sixth Circuit stated: "Because MDOC officials addressed the merits of Holloway's grievance at each step and did not enforce any procedural requirements, Holloway's failure to identify the defendants named in this lawsuit and to specify any wrongdoing by them in his grievances cannot provide the basis for dismissal of his complaint for lack of exhaustion."  *Id.* at 3.  In *Mattox*, the Sixth Circuit held that a prisoner may only exhaust a claim "where he notifies the relevant prison . . . staff" regarding the specific factual claim "giving the prison staff a fair chance to remedy a prisoner's complaints."   slip op. at 16.  For example, grieving a doctor about his failure to give cardiac catheterization failed to grieve the claim that the doctor erred by not prescribing Ranexa.

5

In addition, the grievance policy provides that, where the grievance alleges conduct that falls under the jurisdiction of the Internal Affairs Division pursuant to PD 01.01.140, the prisoner may file his Step I grievance directly with the inspector of the institution in which the prisoner is housed, instead of with the grievance coordinator, as set forth in ¶ V of PD 03.02.130. *Id.* at ¶Q. In such instances, the grievance must be filed within the time limits prescribed for filing grievances at Step I. *Id.* Regardless of whether the grievance is filed with grievance coordinator or the inspector, the grievance will be referred to the Internal Affairs Division for review and will be investigated in accordance with PD 01.01.140. The prisoner will be promptly notified that an extension of time is needed to investigate the grievance. *Id.*

Defendant Contreas asserts that Plaintiff never named him in a grievance and never grieved his claim regarding administrative segregation. Similarly, Defendant Meleko states that Plaintiff never named him in a grievance or grieved issues involving sexual favors. Defendants Gluesing and Wijayagunaratine argue that Plaintiff never grieved retaliatory conduct against them. Plaintiff asserts that he grieved each Defendant through Step III of the grievance procedures. Defendants have asserted that Plaintiff submitted ten relevant grievances through Step III of the grievance process. Defendants have attached the MDOC Step III Grievance Report concerning Plaintiff's grievance filings from May 2009 until the present. (PageID.597-662).

Plaintiff exhausted claims against Defendants Gluesing and Wijayagunaratine for failing to provide medical care in retaliation for his litigation activities. In Grievance MBP-1409-1679-17A, Plaintiff asserted that Defendant Gluesing interfered with his medical care and retaliated against him due to his involvement with litigation against Defendant Gluesing and his co-worker L.P.N. Anderson. (ECF No. 65-3, PageID.663-667). The grievance was denied on the merits through Step III. In Grievance MBP-1408-1429-12D1, Plaintiff stated that Dr.

6

Wijayagunaratine, an unknown P.A., and RN Gabe took action against him because of his lawsuit against L.P.N. Anderson by denying him an orthopedic evaluation for his grade five shoulder separation. That grievance was denied through Step III. (PageID.673-678). In grievance MBP 1307-1273-17a, Plaintiff stated that his enemy, L.P.N. Anderson, issued a false misconduct ticket and threatened him with assault and the destruction of his personal property. (PageID.694-698). The grievance was denied through Step III. In the opinion of the undersigned, Plaintiff exhausted claims against Defendants Gluesing and Wijayagunaratine.[4]

Plaintiff never named Defendant Contreas or Defendant Meleko in a grievance that was exhausted through Step III. Moreover, Plaintiff never grieved the conduct that he attributes to Defendants Contreas or Meleko. Accordingly, in the opinion of the undersigned, Defendant Contreas and Defendant Meleko should be dismissed due to Plaintiff's failure to exhaust administrative grievance procedures on the claims asserted against them.

Plaintiff has filed several motions which the Court construes as requests for injunctive relief. Plaintiff filed a motion for "retaliatory claims by Defendants against Plaintiff

---

[4] A number of Plaintiff's grievances were rejected. In Grievance MBP-1409-1607-12E3, Plaintiff named "Dr. Wijay and Nurse Gabe" in his Step I grievance. (PageID.671). That grievance was rejected at Step III due to untimeliness. (PageID.668) ("The grievant's Step III appeal was to be received by December 2, 2014, however it was not received until December 19, 2014.") In grievance MBP 1406-00989-12D1, Plaintiff complained that Dr. Wijay and P.A. Vayre deprived him of medical treatment and refused to refer him to an orthopedic surgeon. (PageID.678-682). Plaintiff's grievance was rejected at Step III due to being untimely. ("The grievant's Step III appeal was to be received by August 12, 2014, however it was not received until August 22, 2014.") In grievance MBP 1406-0990-12H1, Plaintiff complained that Dietician K. Wellman, Dr. Wijay, and P.A. Vayre denied him snack bags to take with his medication. Plaintiff's grievance was rejected at Step III due to being untimely. ("The grievant's Step III appeal was to be received by August 12, 2014, however it was not received until August 22, 2014.") (PageID.683-687). In grievance MBP 1406-1034-28a, Plaintiff complained that he was not receiving medical care from Dr. Wijay, nurse Gabe, RN Supervisors James and Corant, H.U.M. Hill, and R.N. Patricia Lamb. Plaintiff's grievance was rejected as duplicative to "MBP 14060098912D1 and MBP 1406099012H1." (PageID.688-690). In grievance MBP 1312-2315-28e, Plaintiff asserted retaliation claims against individuals who are not Defendants in this action. The grievance was rejected and the rejection was upheld at Step III. (PageID.691-693). In grievance MBP 1307-1253-28b, Plaintiff asked nurse supervisors Shuklea and Thomas to have nurse Anderson leave him alone and stay away from him. Plaintiff asserted that he feared retaliation from nurse Anderson, her friends, and her lover in health care. The grievance was rejected as vague and for failing to provide a grievable issue. (PageID. 699-701). The rejection was upheld through Step III. In grievance MBP 1209-2302-28b, Plaintiff stated that nurse Anderson would lie and that her co-workers would retaliate and lie to support her. Plaintiff's grievance was rejected for not being clear and concise. The rejection was upheld through Step III. (PageID.702-703).

regarding Plaintiff's medical needs. Plaintiff cites deliberate indifference by Defendants and Defendants' colleagues, friends, family, lovers, and supervisors regarding Plaintiff's medical and mental health needs: deliberate indifference and delayed care" (ECF No. 62). Plaintiff requests an evidentiary hearing and court order compelling adequate and effective medical care. Plaintiff filed a motion for a "new retaliatory claim against Defendant nurse Gabe Gluesing and Defendant Gluesing's gay homosexual lover, friend, and colleague, nurse Adam Foster" (ECF No. 63). Plaintiff requests a court hearing and a temporary restraining order to keep Defendant Gluesing and Adam Foster from working around him. Plaintiff filed a motion "to compel Defendants to stop denying me my excess legal personal property" (ECF No. 69). Plaintiff asserts that Brian Durand, Fred Govern, and unknown Defendants took his property and will not return it until he drops his lawsuit. Plaintiff has filed a request that all of his motions be heard at the federal courthouse in Marquette, Michigan. (ECF No. 72). Plaintiff filed a motion for "retaliatory claim" and "motion to compel" (ECF No. 94). Plaintiff states that he transferred from Marquette Branch Prison to the Charles Egeler Reception and Guidance Center (RGC), but is wrongfully confined in segregation and not in general population. Plaintiff asserts that he was supposed to be transferred to the Duane Waters Prison Hospital or the G Robert Cotton Correctional Facility. Plaintiff requests that the Court order Defendants to stop violating his rights, remove him from segregation, and place him at the Duane Waters Prison Hospital or into general population. Plaintiff further requests extensions of time on court deadlines and time to respond to motions. Plaintiff has requested that the court order the librarian at MBP to make 5 copies of his response brief to Defendants Contreas, Gluesing, Wijaygunaratine, and Melekos summary judgment motion. Plaintiff was told that he could receive only 4 copies. Plaintiff requests an order against individuals to cease and desist their interference with his request for copies, and a fine of $5,000 each day that

they fail to comply. In addition, Plaintiff requests that the Court make copies of his summary judgment response brief and send those copies to Defendants and their attorney. (ECF No. 83). Plaintiff filed an additional "motion for injunctive relief" (ECF No. 99).

The issuance of preliminary injunctive relief is committed to the discretion of the district court. *Planned Parenthood Association v. City of Cincinnati*, 822 F.2d 1390, 1393 (6th Cir. 1987). In exercising that discretion, the court must consider and balance four factors:

> 1. Whether the movant has shown a strong or substantial likelihood or probability of success on the merits.
>
> 2. Whether the movant has shown irreparable injury.
>
> 3. Whether the preliminary injunction could harm third parties.
>
> 4. Whether the public interest would be served by issuing a preliminary injunction.

*Washington v. Reno*, 35 F.3d 1093 (6th Cir. 1994). These factors are not prerequisites to the grant or denial of injunctive relief, but factors that must be carefully balanced by the district court in exercising its equitable powers. *Id.*

Moreover, where a prison inmate seeks an order enjoining state prison officials, this Court is required to proceed with the utmost care and must recognize the unique nature of the prison setting. *See Kendrick v. Bland*, 740 F.2d 432 at 438, n.3, (6th Cir. 1984). *See also Harris v. Wilters*, 596 F.2d 678 (5th Cir. 1979). It has also been remarked that a party seeking injunctive relief bears a heavy burden of establishing that the extraordinary and drastic remedy sought is appropriate under the circumstances. *See Checker Motors Corp. v. Chrysler Corp.*, 405 F.2d 319 (2d Cir. 1969), *cert*. *denied*, 394 U.S. 999 (1969). *See also O'Lone v. Estate of Shabazz*, 482 U.S. 342 (1986).

Plaintiff's "initial burden" in demonstrating entitlement to preliminary injunctive relief is a showing of a strong or substantial likelihood of success on the merits of his Section 1983 action. *NAACP v. City of Mansfield, Ohio*, 866 F.2d 162, 167 (6th Cir. 1989). A review of the materials of record fails to establish a substantial likelihood of success with respect to plaintiff's claim that the defendants have violated his federal rights. Plaintiff has made no effort to support his claims that remaining Defendants violated his right to necessary medical care by retaliating against him. In addition, Plaintiff has presented several requests for relief that are either unrelated to his underlying cause of action for denial of medical care in retaliation for his grievance and litigation activities or against individuals that are not Defendants in this action. *De Beers Consol. Mines Ltd. v. United States*, 325 U.S. 212, 220 (1945) (preliminary injunction appropriate to grant relief of "the same character as that which may be granted finally," but inappropriate where the injunction "deals with a matter lying wholly outside of the issues in the suit.") Plaintiff is no longer being housed where the Defendants are employed. Plaintiff is now being housed at the Ionia Correctional Facility, (http://mdocweb.state.mi.us/OTIS2/otis2profile.aspx?), and he is no longer at MBP or RGC. The Sixth Circuit has held that transfer to another prison facility moots prisoner injunctive and declaratory claims. *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir.1996); *Mowatt v. Brown*, No. 89-1955, 1990 WL 59896 (6th Cir. May 9, 1990); *Tate v. Brown*, No. 89-1944, 1990 WL 58403 (6th Cir. May 3, 1990); *Howard v. Heffron*, No. 89-1195, 1989 WL 107732 (6th Cir. September 20, 1989); *Williams v. Ellington*, 936 F.2d 881 (6th Cir. 1991). These Sixth Circuit opinions contain only brief explanations of the reasoning supporting this rule. Underlying the rule is the premise that injunctive relief is appropriate only where plaintiff can show a reasonable expectation or demonstrated probability that he is in immediate danger of sustaining direct future injury as the *result* of the challenged official conduct. *Los Angeles v. Lyons*, 461 U.S. 95, 102

(1983).  Past exposure to an isolated incident of illegal conduct does not, by itself, sufficiently prove that the plaintiff will be subjected to the illegal conduct again.  *See, e.g., Lyons*, 461 U.S. at 102; *Alvarez v. City of Chicago*, 649 F. Supp. 43 (N.D. Ill. 1986); *Bruscino v. Carlson*, 654 F. Supp. 609, 614, 618 (S.D. Ill. 1987), *aff'd*, 854 F.2d 162 (7th Cir. 1988); *O'Shea v. Littleton*, 414 U.S. 488, 495-496 (1974).  A court should assume that, absent an official policy or practice urging unconstitutional behavior, individual government officials will act constitutionally.  *Lyon*, 461 U.S. at 102; *O'Shea*, 414 U.S. at 495-496.

Furthermore, Plaintiff has failed to establish that he will suffer irreparable harm absent injunctive relief.  Finally, in the context of a motion impacting on matters of prison administration, the interests of identifiable third parties and the public at large weigh against the granting of an injunction.  Any interference by the federal courts in the administration of state prison matters is necessarily disruptive.  The public welfare therefore militates against the issuance of extraordinary relief in the prison context, absent a sufficient showing of a violation of constitutional rights.  *See Glover v. Johnson*, 855 F.2d 277, 286-87 (6th Cir. 1988).  That showing has not been made here.

For the foregoing reasons, I recommend that Defendants' motion for summary judgment (ECF No. 65) be denied as to Defendants Gluesing and Wijayargunaratine and granted as to Defendants Contreas and Meleko, dismissing Defendants Contreas and Meleko without prejudice.  It is further recommended that Plaintiff's motions requesting relief (ECF No. 62, 63, 69, 72, 83, 94, and 99) be denied.

/s/ Timothy P. Greeley
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE

Dated:   April 12, 2018

## **NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to file timely objections may constitute a waiver of any further right of appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).